# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

TIFFANY SIMPSON,
Personal Representative of the Estate of
Logan Wayne Simpson,

    Plaintiff,

v.

JON LITTLE, in his individual capacity,
IKE SHIRLEY,
CITY OF BIXBY, OKLAHOMA,
JANE DOE, and
JOHN DOE,

    Defendants.

Case No. 18-CV-491-GKF-FHM

## **OPINION AND ORDER**

Before the court is the Motion to Dismiss of defendant Jon Little. [Doc. 28]. For the reasons set forth below, the motion is denied.

### I. Relevant Allegations

On July 22, 2018, sixteen-year-old Logan Simpson and his brother, Kyle Simpson, were sitting outside their family's home with Deante Strickland in the early morning hours. [Doc. 26, p. 3 ¶ 12]. At some point, Mr. Strickland became violent and attacked Logan, then Kyle, with an ax. [*Id.*]. While Mr. Strickland was attacking his brother, Logan ran inside the house for help. [*Id.*, ¶ 13]. Logan woke up his sleeping parents, telling them Kyle was being attacked. [*Id.*]. Logan's father went outside, separated Mr. Strickland from Kyle, and restrained Mr. Strickland until police arrived. [*Id.*, pp. 3-4 ¶¶ 14, 17]. Logan's mother called 9-1-1. [*Id.*, p. 3 ¶ 14].

At some point during the chaos, Logan got in his white sports utility vehicle ("SUV") and left the scene. [*Id.*, p. 4 ¶ 16]. Noticing Logan's SUV was missing from the driveway and suspecting foul play, Logan's mother asked Mr. Strickland who took the vehicle. [*Id.*, ¶ 17]. Mr.

Strickland responded "[m]y homeboy took it." [*Id.*]. Taking that to mean the SUV was stolen, Logan's mother called 9-1-1 again and reported the assumed theft. [*Id.*, ¶ 18].

Police Officer Jon Little was responding to the initial call at the Simpson home when he heard the stolen vehicle report over the radio. [*Id.*, p. 5 ¶ 22]. Officer Little passed a vehicle matching the description of Logan's SUV on Highway 64 and turned around to follow it. [*Id.*, ¶ 23]. Officer Little followed the vehicle, which was in fact Logan's SUV driven by Logan himself, for some time. [*Id.*, ¶ 24]. Logan was not speeding or driving erratically. [*Id.*, ¶ 25].

Officer Little eventually turned on his lights and siren to initiate a stop of the SUV. [*Id.*, ¶ 26]. Logan did not pull over, but instead proceeded on East 176th Street in Bixby, Oklahoma until he came to a dead end near South 89th Street East Avenue. [*Id.*, ¶ 27; Doc. 26-3, p. 2]. At the dead end, Logan left the roadway to turn around in a yard. [*Id.*, ¶ 28]. While Logan was completing his turn, Office Little parked his patrol vehicle across the nearby driveway. [*Id.*, ¶ 28]. After Logan completed his turn, he was facing East 176th Street behind a gap created by two parked vehicles. [*Id.*, p. 6 ¶ 33]. Officer Little exited his vehicle, drew his firearm, and ran to the side of the SUV shouting "Get on the ground!" and "Show me your hands!" [*Id.*, ¶ 32]. Officer Little made eye contact with Logan and stepped into the gap between the two parked vehicles. [*Id.*, ¶ 33]. As Logan pulled slowly forward, Officer Little stepped out of the SUV's path and continued to shout "Get on the ground!" and "Show me your hands!" [*Id.*, ¶ 34]. Officer Little continued to hold his firearm in firing position. [*Id.*]. Officer Little knew that Logan was unarmed. [*Id.*, pp. 6-7 ¶¶ 33, 44].

As Logan drove past Officer Little, the officer began firing. [*Id.*, p. 6 ¶ 36]. Officer Little continued to fire as Logan drove past him and down the street, even running after the SUV while continuing to fire. [*Id.*]. A total of ten shots struck the SUV, starting at the driver's side door and

2

continuing down the side to the rear of the vehicle. [*Id.*, ¶ 37]. Two of Officer Little's shots pierced the driver's side door and entered Logan's body through his left hip. [*Id.*, p. 7 ¶ 38]. Logan continued down East 176th Street for approximately three blocks before his injuries caused him to lose control of the SUV and drive off the road. [*Id.*, pp 7-8 ¶ 45]. Approximately fifteen minutes later, other Bixby police officers found Logan's SUV in high grass near South 92nd East Avenue and East 176th Street. [*Id.*, p. 8 ¶¶ 46-47].

Logan passed away later that day from the gunshot wounds inflicted by Officer Little. [*Id.*, p. 9 ¶ 53]. Logan's mother brings this lawsuit pursuant to 42 U.S.C. § 1982 as the personal representative of her son's estate for violation of Logan's Fourth and Fourteenth Amendment rights. [*Id.*, p. 1 ¶ 1; pp. 9-10 ¶¶ 54-63]. Officer Little moves to dismiss on the grounds that he is entitled to qualified immunity. [Doc. 28].

## II. Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Cummings v. Dean*, 913 F.3d 1227, 1238 (10th Cir. 2019) (quoting *Emps.' Ret. Sys. of R.I. v. Williams Cos., Inc.*, 889 F.3d 1153, 1161 (10th Cir. 2018)). In making this assessment, the court "accept[s] the facts alleged in the complaint as true and view[s] them in the light most favorable to the plaintiff." *Mayfield v. Bethards*, 826 F.3d 1252, 1255 (10th Cir. 2016). "When a defendant raises the qualified-immunity defense, the 'onus is on the plaintiff to demonstrate (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct.'" *Cummings*, 913 F.3d at 1239 (emphasis omitted) (quoting *Quinn v. Young*, 780 F.3d 998, 1004 (10th Cir. 2015)).

**A. Did the Use of Force Constitute a Constitutional Violation?**

The plaintiff alleges "Logan Simpson had a clearly established right, pursuant to the Fourth and Fourteenth Amendments to the Constitution of [the] United States of America to be free from the use of excessive force by a police officer." [Doc. 26, p. 9 ¶ 55]. The Supreme Court has held that "*all* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than a 'substantive due process' approach." *Graham v. Connor*, 490 U.S. 386, 395 (1989) (emphasis original). "To state an excessive force claim 'under the Fourth Amendment, plaintiffs must show *both* that a seizure occurred and that the seizure was unreasonable.'" *Thomas v. Durastanti*, 607 F.3d 655, 663 (10th Cir. 2010) (quoting *Childress v. City of Arapaho*, 210 F.3d 1154, 1156 (10th Cir. 2000)).

First, the plaintiff has alleged sufficient facts to show Officer Little's shots constituted a "seizure." "While it is not always clear just when minimal police interference becomes a seizure, there can be no question that apprehension by the use of deadly force is a seizure subject to the reasonableness requirement of the Fourth Amendment." *Tennessee v. Garner*, 471 U.S. 1, 7 (1985) (internal citation omitted). Here, Logan's freedom of movement was terminated by Officer Little's intentional shots. *See Brower v. County of Inyo*, 489 U.S. 593, 597 (1989) (A "seizure" occurs "when there is a governmental termination of freedom of movement *through means intentionally applied*." (emphasis original)); *cf. Brooks v. Gaenzle*, 614 F.3d 1213, 1224 (10th Cir. 2010) (officer did not effect "seizure" of fleeing suspect when his shot did not terminate the suspect's movement). Officer Little struck Logan's SUV with ten rounds, two of which hit Logan himself and ultimately resulted in his death. [Doc. 26, pp. 6-7, 9 ¶¶ 37-38, 53]. Due to his injuries, Logan lost control of his SUV, went off the road, and was stopped in high grass a few blocks from where he was shot. [*Id.*, p. 7-8 ¶¶ 45-46]. A Fourth Amendment "seizure" occurred.

Second, the plaintiff has alleged sufficient facts to show Officer Little's use of deadly force was unreasonable. The reasonableness of the seizure is "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. Proper application of the Fourth Amendment "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* (citing *Garner*, 471 U.S. at 8-9).

The "severity of the crime" and "flight" factors described in *Graham*, 490 U.S. at 396, weigh in Officer Little's favor. Officer Little was responding to a call about a stolen SUV, a felony under Oklahoma law.[1] [Doc. 26, p. 5 ¶ 22]; *see also* 47 O.S. § 4-102. Officer Little "passed a white SUV" matching the description of the stolen vehicle and followed it "for a ways without turning on his lights and siren." [Doc. 26, p. 5 ¶¶ 23-24]. When Officer Little turned on his lights and siren to initiate a traffic stop, Logan did not pull over. [*Id.*, ¶ 27]. Thus, the crime at issue was a felony and, as far as Officer Little knew, Logan was attempting to evade arrest by flight.[2] *See Henry v. Storey*, 658 F.3d 1235, 1239 (10th Cir. 2011) (Where the officer "had probable cause to believe [the suspect] had stolen a vehicle, a felony," the officer could "reasonably conclude that

---

[1] Viewing the facts in the light most favorable to the plaintiff, the court does not read the complaint to indicate Officer Little knew the reported violent assault and stolen vehicle were connected. [*See* Doc. 26, p. 4 ¶ 19 ("Jane Doe put a call out over the radio about a stolen white Toyota SUV."); *id.*, p. 5 ¶ 22 ("Officer Little . . . was in route to the Simpson home . . . when he heard the stolen vehicle description go out over the radio.")]. The crime at issue for purposes of this analysis is theft of a motor vehicle, not assault with a deadly weapon.

[2] While plaintiff alleges that Officer Little knew Logan was unarmed [*see* Doc. 26, pp. 6-7 ¶¶ 33, 44], which generally weighs in favor of the plaintiff, the relevant "weapon" for purposes of this analysis is the SUV. *See Thomas v. Durastanti*, 607 F.3d at 664 ("Thus, if threatened by a weapon (which may include a vehicle attempting to run over an officer), an officer may use deadly force.").

the driver posed an immediate threat to the safety of the officers and the public—a driver caught with a stolen vehicle has a strong incentive to evade arrest, given the seriousness of the crime.").

The circumstances here, as alleged in the complaint, are nonetheless sufficient to constitute a Fourth Amendment violation. "The use of deadly force is justified under the Fourth Amendment if a reasonable officer in the Defendant's position would have had probable cause to believe that there was a threat of serious physical harm to themselves or others." *Zia Trust Co. ex rel. Causey v. Montoya*, 597 F.3d 1150, 1154 (10th Cir. 2010) (quoting *Walker v. City of Orem*, 451 F.3d 1139, 1159 (10th Cir. 2006)). "[B]ut that statement must not be read too broadly. It does not mean that any risk of physical harm to others, no matter how slight, would justify any application of force, no matter how certain to cause death." *Cordova v. Aragon*, 569 F.3d 1183, 1190 (10th Cir. 2009).

The court cannot say, viewing the facts in the light most favorable to the plaintiff, that Officer Little could have reasonably believed he was in danger at the moment he began shooting. Plaintiff alleges that Officer Little was not in the path of the SUV when he began firing his weapon. [Doc. 26, p. 6 ¶¶ 34, 36]. Officer Little did not fire until Logan was driving past him and "continued firing as Logan continued past him and down the street." [*Id.*, ¶ 36]. Officer Little "ran after Logan's SUV, continuing to fire." [*Id.*]. Of the ten bullets that struck Logan's SUV, none hit the front of the SUV, thereby indicating Officer Little was not in front of the SUV when he fired his weapon. [*See id.*, ¶ 37]. Further, Logan "pulled forward slowly" and completed a three-point turn to turn around at a dead end after driving normally and without speeding. [*Id.*, pp. 5-6 ¶¶ 25, 32, 34]. Insofar as Officer Little was not in the path of the SUV, was some distance away, and Logan was driving the SUV slowly, probable cause did not exist to believe Logan posed a threat of serious physical harm to Officer Little or anyone else. *See Zia Trust Co.*, 597 F.3d at 1155 (finding a constitutional violation on summary judgment where officer shot driver of van and

"it [was] not clear that [the driver] manifested an intent to harm [the officer] or anyone else at the scene."); *Godawa v. Byrd*, 798 F.3d 457, 464 (6th Cir. 2015) ("[A]s a general matter, an officer may not use deadly force once the car moves away, leaving the officer and bystanders in a position of safety."); *Vaughan v. Cox*, 343 F.3d 1323, 1330 (11th Cir. 2003) (finding a constitutional violation where officer did not face immediate threat of serious harm by suspects evading arrest in a vehicle when he used deadly force). Plaintiff has alleged sufficient facts to show a constitutional violation.

**B. Was the Constitutional Right Clearly Established?**

Having determined the existence of a constitutional violation for purposes of the motion to dismiss, the court must consider whether the law was clearly established at the time of the violation. *Peterson v. Jensen*, 371 F.3d 1199, 1202 (10th Cir. 2004). "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Zia Trust Co.*, 597 F.3d at 1155 (quoting *Cruz v. City of Laramie*, 239 F.3d 1183, 1187 (10th Cir. 2001)). The Supreme Court has cautioned courts "not to define clearly established law at a high level of generality." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (per curiam) (quoting *City and County of San Francisco v. Sheehan*, 135 S. Ct. 1765, 1775-76 (2015). "Use of excessive force is an area of the law 'in which the result depends very much on the facts of each case,' and thus police officers are entitled to qualified immunity unless existing precedent 'squarely governs' the specific facts at issue." *Id.* at 1153 (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 309 (2015)). "Precedent involving similar facts can help move a case beyond the otherwise 'hazy border between excessive and acceptable force' and thereby provide an officer notice that a specific use of force is unlawful." *Id.* (quoting *Mullenix*, 136 S. Ct. at 312).

7

Defendant argues that "existing Tenth Circuit case law forecloses Plaintiff's claim that Defendant Little's conduct was unreasonable or in violation of existing law." [Doc. 28, p. 13]. Defendant points to *Thomas v. Durastanti*, 607 F.3d 655 (10th Cir. 2010) and *Carabajal v. City of Cheyenne, Wyoming*, 847 F.3d 1203 (10th Cir. 2017). However, both of those cases were decided on summary judgment and involved suspects driving *towards* officers placing them in immediate danger of harm. *See Thomas*, 607 F.3d at 665 ("In the process, the driver was advancing toward [the officer] placing him in harm's way."); *Carabajal*, 847 F.3d at 1210 ("[T]he scene involved close quarters. The video evidence further demonstrates that the vehicle was moving in [the officer's] direction, and a reasonable officer could have perceived that Mr. Carabajal's driving was deliberate."). Because Officer Little allegedly shot Logan from a place of safety, *Thomas* and *Carabajal* are not persuasive.

Tenth Circuit precedent and the great weight of authority from other courts illustrate that the use of deadly force in similar situations where a suspect, fleeing in a vehicle, poses no immediate threat to the officer or others is a violation of clearly established law.

In *Zia Trust Co.*, an officer responding to a domestic violence call ordered a suspect to get out of the van he was driving. 597 F.3d at 1153. The officer was standing in front of the van when—although allegedly stuck on a pile of rocks—the van jumped forward about a foot. *Id.* The officer fired a single shot into the vehicle in response, fatally wounding the driver. *Id.* The court held that the officer was not entitled to qualified immunity on summary judgment because the officer "did not have probable cause to believe that there was a serious threat of serious physical harm to himself or others." *Id.* at 1155 (internal quotation marks and citation omitted). "As such, [the officer] violated clearly established law when he used deadly force." *Id.* Similarly here, under

8

the facts alleged, Officer Little did not have probable cause to believe Logan posed a serious threat to himself as the SUV moved past him and down the street.

In *Cordova v. Aragon*, 569 F.3d 1183 (10th Cir. 2009), police attempted to pull over a vehicle, but the driver did not comply and attempted to evade arrest. The officer was not in immediate danger and no innocent bystanders were in the vicinity. *Id.* at 1187. The Tenth Circuit held that the other dangers posed by a potential car chase were not enough to justify shooting the driver, even where the suspect was "towing a large piece of machinery down the wrong way of a highway in the dark, and employing evasive maneuvers such as running red lights, driving off the road, and attempting to ram police cars." *Id.* at 1189. The Tenth Circuit held "simply that a distant risk to hypothetical motorists posed by a suspect's reckless driving alone does not justify shooting that suspect." *Id.* at 1195. The court explained "[c]ar chases inherently risk injury to persons who might happen along their course, and if that risk alone could justify shooting the suspect, every chase would end much more quickly with a swiftly-fired bullet." *Id.* at 1190. *Cordova* established what was not clear before: When an officer, like Officer Little is alleged to have done here, uses a "level of force nearly certain to cause . . . death, though without any immediate threat to himself or others" he violates the Constitution. *Id.* at 1195.

Other circuits have also concluded that "an officer may not use deadly force once the car moves away, leaving the officer and bystanders in a position of safety." *Godawa*, 798 F.3d at 457; *see also Vaughan v. Cox*, 343 F.3d at 1330 (officers were not entitled to qualified immunity where "[g]enuine issues of material fact remain as to whether [the suspects'] flight presented an immediate threat of serious harm to [the officer] or others at the time [the officer] fired the shot that struck [the suspect].""). In *Lytle v. Bexar County, Tex.*, 560 F.3d 404 (5th Cir. 2009), the Fifth Circuit explained:

9

> It has long been clearly established that, absent any other justification for the use of force, it is unreasonable for a police officer to use deadly force against a fleeing felon who does not pose a sufficient threat of harm to the officer or others. This holds as a general matter and in the more specific context of shooting a suspect fleeing in a motor vehicle.

*Id.* at 417-18 (internal citations omitted). Accordingly, the "clearly established weight of authority from other courts" supports a denial of qualified immunity to Officer Little under the facts alleged. *See Cummings*, 913 F.3d at 1239 (To satisfy the clearly-established standard, plaintiffs may point to Supreme Court and Tenth Circuit opinions on point or "alternatively, the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." (internal quotation marks omitted)).

*Zia Trust Co.* illustrates that an officer's use of deadly force without probable cause to believe that a suspect, while driving a vehicle, presents a serious threat of physical harm to himself or others is a violation of clearly established law. *Cordova* further illustrates that the use of deadly force is not justified where a suspect poses a general threat to hypothetical motorists in a potential car chase. Other circuits have reached similar conclusions. Plaintiff's factual allegations and related inferences—namely, that Officer Little shot Logan Simpson from a place of safety as Logan drove slowly away—show the violation of a clearly established constitutional right.[3]

### III. Conclusion

WHEREFORE, defendant's Motion to Dismiss [Doc. 28] is DENIED.

IT IS SO ORDERED this 30th day of October, 2019.

Gregory K. Frizzell
United States District Judge
Northern District of Oklahoma

---

[3] The court emphasizes that this analysis only accounts for the plaintiff's version of events, a version which later evidence may later contradict or a jury may reject. *See Zia Trust Co.*, 597 F.3d at 1155.