# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

TIFFANY SIMPSON,
Personal Representative of the Estate of
Logan Wayne Simpson,

    Plaintiff,

v.

JON LITTLE, in his individual capacity,
IKE SHIRLEY,
CITY OF BIXBY, OKLAHOMA,
JANE DOE, and
JOHN DOE,

    Defendants.

Case No. 18-CV-491-GKF-FHM

## **OPINION AND ORDER**

Before the court is the Motion to Dismiss of defendants Ike Shirley and the City of Bixby, Oklahoma. [Doc. 34]. For the reasons set forth below, the motion is granted as to Plaintiff's Fourth Amendment claim against Chief Shirley in his individual capacity for failure to supervise, train, and discipline, Plaintiff's Fourth Amendment claim against the City for failure to supervise and discipline, and all claims against Chief Shirley in his official capacity. The motion is otherwise denied.

### I. Relevant Allegations

On July 22, 2018, sixteen-year-old Logan Simpson and his brother, Kyle Simpson, were sitting outside their family's home with Deante Strickland in the early morning hours. [Doc. 26, p. 3 ¶ 12]. At some point, Mr. Strickland became violent and attacked Logan and Kyle with an ax. [*Id.*]. While Mr. Strickland was attacking his brother, Logan ran inside to wake up his sleeping parents. [*Id.*, ¶ 13]. Logan's father went outside, separated Mr. Strickland from Kyle, and

restrained Mr. Strickland until police arrived. [*Id.*, pp. 3-4 ¶¶ 14, 17]. Logan's mother called 9-1-1. [*Id.*, p. 3 ¶ 14].

At some point during the chaos, Logan got in his white sports utility vehicle ("SUV") and left the scene. [*Id.*, p. 4 ¶ 16]. Noticing Logan's SUV was missing from the driveway and suspecting foul play, Logan's mother asked Mr. Strickland who took the vehicle. [*Id.*, ¶ 17]. Mr. Strickland responded "[m]y homeboy took it." [*Id.*]. Taking that to mean the SUV was stolen, Logan's mother called 9-1-1 again and reported the assumed theft. [*Id.*, ¶ 18]. Police Officer Jon Little was responding to the initial call at the Simpson home when he heard the stolen vehicle report over the radio. [*Id.*, p. 5 ¶ 22]. Officer Little passed a vehicle matching the description of Logan's SUV on Highway 64 and turned around to follow it. [*Id.*, ¶ 23].

Officer Little eventually turned on his lights and siren to initiate a stop of the SUV, which was in fact Logan's SUV driven by Logan himself. [*Id.*, ¶¶ 24, 26]. Logan did not pull over, but instead proceeded on East 176th Street in Bixby, Oklahoma until he came to a dead end near South 89th Street East Avenue. [*Id.*, ¶ 27; Doc. 26-3, p. 2]. At the dead end, Logan left the roadway to turn around in a yard. [*Id.*, ¶ 28]. While Logan was completing his turn, Office Little parked his patrol vehicle across the nearby driveway. [*Id.*, ¶ 28]. After Logan completed his turn, he was facing East 176th Street behind a gap created by two parked vehicles. [*Id.*, p. 6 ¶ 33]. Officer Little exited his vehicle, drew his firearm, and ran to the side of the SUV shouting "Get on the ground!" and "Show me your hands!" [*Id.*, ¶ 32]. Officer Little made eye contact with Logan and stepped into the gap between the two parked vehicles. [*Id.*, ¶ 33]. As Logan pulled slowly forward, Officer Little stepped out of the SUV's path and continued to shout "Get on the ground!" and "Show me your hands!" [*Id.*, ¶ 34]. Officer Little continued to hold his firearm in firing position. [*Id.*]. Officer Little knew that Logan was unarmed. [*Id.*, pp. 6-7 ¶¶ 33, 44].

As Logan drove past Officer Little, the officer began firing. [*Id.*, p. 6 ¶ 36]. Officer Little continued to fire as Logan drove past him and down the street, even running after the SUV while continuing to fire. [*Id.*]. A total of ten shots struck the SUV, starting at the driver's side door and continuing down the side to the rear of the vehicle. [*Id.*, ¶ 37]. Two of Officer Little's shots pierced the driver's side door and entered Logan's body through his left hip. [*Id.*, p. 7 ¶ 38]. Logan continued down East 176th Street for approximately three blocks before his injuries caused him to lose control of the SUV and drive off the road. [*Id.*, pp. 7-8 ¶ 45].

Officer Little did not find Logan. After the shooting, Officer Little drove past Logan's tire marks twice and failed to provide his location to dispatchers. [*Id.*, p. 7 ¶¶ 44-45]. Approximately fifteen minutes later, other Bixby police officers found Logan's SUV in high grass near South 92nd East Avenue and East 176th Street. [*Id.*, p. 8 ¶¶ 46-47]. The other officers began to administer first aid to Logan until paramedics arrived five minutes later in an ambulance. [*Id.*, ¶¶ 47-48]. Due to the seriousness of Logan's injuries, the paramedics asked dispatchers to send the Bixby fire department to the scene. [*Id.*, ¶ 49]. However, the fire department never arrived and the dispatchers failed to advise the paramedics that the fire department would not or could not come. [*Id.*, ¶ 50]. The paramedics waited with Logan until his condition deteriorated to the point they could not wait any longer for the fire department. [*Id.*, ¶ 51]. One of the officers on the scene instructed Officer Little to ride in the back of the ambulance with the paramedics to provide medical care to Logan on the way to the hospital. [*Id.*]. Logan passed away later that day from the gunshot wounds inflicted by Officer Little. [*Id.*, p. 9 ¶ 53].

Logan's mother brings this lawsuit pursuant to 42 U.S.C. § 1983 as the personal representative of her son's estate for violation of Logan's Fourth and Fourteenth Amendment rights. Plaintiff names five defendants: Officer Little, in his individual capacity; Bixby Chief of

Police Ike Shirley ("Chief Shirley"), in his individual and official capacities; the City of Bixby (the "City"); and dispatchers Jane Doe and John Doe, in their individual capacities.

Plaintiff brings one cause of action against Officer Little. The officer moved to dismiss on the grounds he is entitled to qualified immunity. [Doc. 28]. The court denied the motion on October 30, 2019. [Doc. 44]. Plaintiff brings one cause of action against the City, Jane Doe and John Doe; one cause of action against Chief Shirley in his official capacity and the City; and one cause of action against Chief Shirley in his individual capacity. [Doc. 26]. In the instant motion, Chief Shirley and the City move to dismiss all claims asserted against them. [Doc. 34].

## II. Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Cummings v. Dean*, 913 F.3d 1227, 1238 (10th Cir. 2019) (quoting *Emps.' Ret. Sys. of R.I. v. Williams Cos., Inc.*, 889 F.3d 1153, 1161 (10th Cir. 2018)). In making this assessment, the court "must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." *Waller v. City & County of Denver*, 932 F.3d 1277, 1282 (10th Cir. 2019) (quoting *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007)). "[M]ere labels and conclusions and a formulaic recitation of the elements of a cause of action will not suffice." *Id.* (quoting *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012)). "Accordingly, in examining a complaint under Rule 12(b)(6), [the court] will disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable." *Id.* (quoting *Khalik*, 671 F.3d at 1191). Put another way, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

4

defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

**A. The Underlying Constitutional Violation**

First, the City and Chief Shirley argue all claims against them should be dismissed because "there is no underlying constitutional violation by Defendant Little." [Doc. 34, p. 11]. The court denied Defendant Little's motion to dismiss on those grounds on October 30, 2019. [Doc. 44]. For the reasons articulated in the court's Opinion and Order, this argument fails. "Plaintiff's factual allegations and related inferences—namely, that Officer Little shot Logan Simpson from a place of safety as Logan drove slowly away—show the violation of a clearly established constitutional right." [*Id.*, p. 10].

Relatedly, Chief Shirley argues he is entitled to qualified immunity for the claims asserted against him in his individual capacity. That argument fails for the reasons articulated in the court's October 30, 2019 Opinion and Order. [Doc. 44]. Plaintiff sufficiently alleges the violation of a clearly established constitutional right. Chief Shirley's argument that he was not personally involved in the constitutional violation is a question of culpability and causation, not qualified immunity. The court undertakes that analysis below.

**B. Fourth Amendment Claims against Chief Shirley in his Individual Capacity**

Second, Chief Shirley argues plaintiff's claims against him in his individual capacity fail. [Doc. 34, pp. 11-13]. Plaintiff alleges Chief Shirley caused Officer Little to violate Logan's Fourth Amendment right by failing to appropriately supervise, train, discipline, and conduct due diligence before hiring Officer Little.

Public officials in supervisory roles may be held personally liable for constitutional violations. *Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010). Under *Dodds*, a supervising official may be personally liable where he or she (1) "promulgated, created,

implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." *Id.* "[T]here's no special rule of liability for supervisors. The test for them is the same as the test for everyone else." *Porro v. Barnes*, 624 F.3d 1322, 1328 (10th Cir. 2010). The constitutional right at issue in *Dodds* was substantive due process, which the Tenth Circuit assumed required a showing of deliberate indifference. *Dodds*, 614 F.3d at 1205. In contrast here, Logan's right to be free from excessive force is protected by the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386, 395 (1989). Fourth Amendment claims are subject to an objective reasonableness standard, and the court does not consider an actor's state of mind. *Brigham City, Utah v. Stuart*, 547 U.S. 398, 404 (2006).

Chief Shirley contends plaintiff fails to allege facts sufficient to show he is personally liable for any constitutional violation. [*See* Doc. 34, pp. 11-13]. Chief Shirley points the court to one binding authority resolved on a motion to dismiss: *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). In *Iqbal*, the Supreme Court held the complaint failed to plead facts sufficient to state a claim against federal officials for purposeful and unlawful discrimination. *Id.* at 681-83. The Court explained "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id.* at 676. The factors necessary to show a constitutional violation vary with the provision at issue. *Id*. In *Iqbal*, the plaintiff alleged "invidious discrimination in contravention of the First and Fourth Amendments," which requires pleading "that the defendant acted with discriminatory purpose." *Id.* Here, however, the standard is not purposeful discrimination. It

appears to be objective reasonableness.[1] *Brigham City*, 547 U.S. at 404 ("An action is reasonable under the Fourth Amendment, regardless of the individual officer's state of mind, as long as the circumstances, viewed *objectively*, justify the action." (internal quotation marks, alteration, and citation omitted)).

Plaintiff points to *Burke v. Glanz*, 292 F. Supp. 3d 1235 (N.D. Okla. 2017). In *Glanz*, this court denied a former sheriff's motion to dismiss claims against him in his individual capacity. In that case, a Reserve Deputy of the Tulsa County Sherriff's Office shot a suspect in the back, at close range, while the suspect was unarmed, not fleeing arrest, and had been subdued by other officers. *Id.* at 1240. The deputy was a longtime friend and financial supporter of the former sheriff. *Id.* The sheriff knew the deputy did not have the necessary training or certifications, was not proficient with a firearm, and posed a significant risk to the public. *Id.* The sheriff ignored concerns raised about the deputy, even retaliating against those who brought issues to his attention. *Id.* at 1241-43. This court concluded the plaintiff stated a plausible claim against the former sheriff. "Accepting the allegations of the Complaint as true, plaintiff has stated claims for individual liability against [the sheriff]. Those allegations include that [he] was responsible for policies of providing preferential treatment to his long-time friend and financial supporter . . . which included exempting [his friend] from mandatory training requirements that were established to protect the

---

[1] It is unclear whether plaintiff's claims of personal liability against Chief Shirley for inadequate hiring should be analyzed under an objective reasonableness or deliberate indifference standard. *Compare Webb v. Thompson*, 643 F. App'x 718, 724 (10th Cir. 2016) (unpublished) (holding district court applied <u>incorrect</u> standard—deliberate indifference—in claim against supervising sheriff for Fourth Amendment violation) *with Bd. Of County Com'rs of Bryan County, Okla. v. Brown*, 520 U.S. 397, 414 (applying deliberate indifference standard to hiring claim against sheriff for Fourth Amendment violation); *see also Schneider*, 717 F.3d at 772 (applying deliberate indifference standard for hiring claim against sheriff for substantive due process violation). Applying either standard, plaintiff has sufficiently alleged claims to survive a motion to dismiss for his hiring claims. *See infra* Section C.1 (applying deliberate indifference standard to these facts).

public, with deliberate indifference to the known, excessive risks to the public who would encounter [him]." *Id.* at 1247-48.

Here, in contrast to *Glanz*, the allegations accepted as true do not establish a plausible claim against Chief Shirley in his individual capacity for failure to supervise, train, and discipline Officer Little. "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. Disregarding the bare legal conclusions in the complaint, plaintiff points to Chief Shirley's response to two incidents involving Officer Little she argues caused the Fourth Amendment violation at issue. First, plaintiff alleges Officer Little misreported time on activity sheets. [Doc. 26, p. 11 ¶ 73]. Failing to appropriately discipline for misreporting activity could not plausibly have empowered Officer Little to behave in the unrelated manner alleged, namely to use excessive force in violation of Logan's Fourth Amendment rights. Second, plaintiff alleges Officer Little "was given a Reprimand Level I for following a fleeing suspect too closely and causing an accident." [*Id.*, p. 12 ¶ 76 (internal quotation marks omitted)]. An accident review board determined the accident was "not preventable." [*Id.*]. Failing to appropriately discipline for an unpreventable accident could not plausibly have encouraged Officer Little to engage in preventable behavior while pursuing Logan. Thus, without more, plaintiff has failed to allege sufficient facts from which the court might draw a reasonable inference that Chief Shirley caused the misconduct alleged. *Cf. Glanz*, 292 F. Supp. 3d at 1241-42 (recounting numerous allegations demonstrating sheriff's insistence that deputy not be subject to firearm-related training and proficiency standards).

However, plaintiff does allege sufficient facts to survive a motion to dismiss on his hiring claim. Plaintiff alleges Chief Shirley "failed to perform due diligence before hiring Defendant Little. If Defendant Shirley had done so, he would have known that Defendant Little had been

terminated from his previous law enforcement job because he was unfit for duty." [Doc. 26, p. 11 ¶ 70]. Viewing the facts in the light most favorable to the plaintiff, as the court is required to do at this stage, it is plausible that the plaintiff will be able to show it was objectively unreasonable for Chief Shirley to hire Officer Little in light of his background and in so doing caused the constitutional violation. Whether evidence will ultimately support the allegation is a question for summary judgment or trial. *See Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 771-72 (10th Cir. 2013) (affirming judgment in favor of sheriff on personal involvement in constitutional violation claim for inadequate hiring).

**C. Fourth Amendment Claims Against the City and Chief Shirley in his Official Capacity**

Plaintiff alleges the City and Chief Shirley, in his official capacity, caused Officer Little to violate Logan's constitutional right to be free from excessive force. Specifically, plaintiff alleges the "Bixby Police Department, as instituted and/or approved by Defendant Shirley, has a policy or custom of ignoring officer misconduct, deceit, and use of force." [Doc. 26, p. 13 ¶ 84]. This policy or custom allegedly takes the following forms: the failure to adequately screen Officer Little's background before hiring him, the failure to train officers on how to conduct proper traffic stops and use appropriate force, and the failure to supervise and discipline officers. [*Id.*, pp. 14-16 ¶¶ 87, 95, 98, 101]; *see Waller*, 932 F.3d at 1283-84 (listing forms of "municipal policy or custom" sufficient to establish municipal liability under § 1983).

Suing Chief Shirley in his official capacity "is essentially another way of pleading an action against the county or municipality [he] represent[s]." *Porro*, 624 F.3d at 1328 (citing *Monell v. Dep't of Soc. Servs. of NY*, 436 U.S. 658, 690 n. 55 (1978)). Accordingly, plaintiff's claim against Chief Shirley in his official capacity "is the equivalent" of a suit against the City. *Cox v. Glanz*, 800 F.3d 1231, 1254 (10th Cir. 2015). This court has previously concluded "where a local governmental entity is sued along with an official of that entity in his or her official capacity, the

9

official capacity claims are subsumed within the claims against the government entity and, therefore, the official capacity claims against individual defendants are properly dismissed as redundant." *London v. Hill*, No. 11-CV-028-GKF-FHM, 2012 WL 529934, at *4 (N.D. Okla. Feb. 14, 2012) (citing *Lewis v. Sacramento Cty.*, 98 F.3d 434, 446 (9th Cir. 1996)); *see also Brashear v. Tulsa Cty. Bd. of Cty. Comm'rs,* No. 15-CV-473-GKF-PJC, 2016 WL 633374, at *4 (N.D. Okla. Feb. 17, 2016); *Williams v. City of Tulsa*, No. 11-CV-469-TCK-FHM, 2013 WL 244049, at *11 (N.D. Okla. Jan. 22, 2013) (collecting cases). Although permissible, plaintiff's § 1983 claim against Chief Shirley in his official capacity is redundant because plaintiff also names the City as a defendant. The court therefore dismisses all overlapping claims against Chief Shirley in his official capacity.

In *Monell*, the Supreme Court stated "Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort." 436 U.S. at 691. "[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694; *accord Schneider*, 717 F.3d at 770. "The official policy requirement was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Schneider*, 717 F.3d at 770 (emphasis original) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986)). The court considers plaintiff's theories of municipal liability separately.

*1. Inadequate Hiring*

Failing to adequately screen job applicants can constitute an official policy if the plaintiff meets the stringent "deliberate indifference" standard of fault. *Bd. of County Com'rs of Bryan County, Okla. v. Brown*, 520 U.S. 397, 410-12 (1997); *accord Waller*, 932 F.3d at 1284. "The

10

Supreme Court has made clear that the failure to conduct a sufficient background check on a job applicant is insufficient in itself to satisfy the deliberate indifference element." *Waller*, 932 F.3d at 1285 (citing *Brown*, 520 U.S. at 410-11). "The fact that inadequate scrutiny of an applicant's background would make a violation of rights more *likely* cannot alone give rise to an inference that a policymaker's failure to scrutinize the record of a particular applicant produced a specific constitutional violation." *Brown*, 520 U.S. at 410-11. "Only where adequate scrutiny of an applicant's background would lead a reasonable policymaker to conclude that the plainly obvious consequence of the decision to hire the applicant would be the deprivation of a third party's federally protected right can the official's failure to adequately scrutinize the applicant's background constitute 'deliberate indifference.'" *Id.* at 411.

Here, plaintiff has alleged the City and Chief Shirley "do not do their due diligence before hiring police officers." [Doc. 26, p. 14 ¶ 86]. "Had the City and Defendant Shirley . . . done their due diligence with regard to Defendant Little, they would have known that Defendant Little had been terminated from his previous law enforcement job because he was unfit for duty." [*Id.*, ¶ 87]. In *Waller*, the plaintiff failed to allege deliberate indifference where "the complaint allege[d] that Denver has hired some deputies with criminal records," but did not allege the officer who used excessive force was one of those deputies. *Waller*, 932 F.3d at 1285. In contrast here, plaintiff has alleged *Officer Little* was inappropriately hired. Further, the court can reasonably infer from the facts alleged, viewing them in the light most favorable to plaintiff, that due diligence would have led the City and Chief Shirley to conclude Officer Little's "use of excessive force would be a plainly obvious consequence of the hiring decision." *Brown*, 520 U.S. at 412-13. There is no heightened pleading standard for § 1983 lawsuits. *Leatherman v. Tarrant Cty. Narcotics Unit*, 507 U.S. 163, 168 (1993). If discovery shows "adequate scrutiny" of Officer Little's background

would not have led "a reasonable policymaker to conclude that the plainly obvious consequence of the decision to hire [Officer Little] would be the deprivation of a third party's federally protected right," plaintiff's claim will not survive summary judgment. *Schneider*, 717 F.3d at 772; *see also Leatherman*, 507 U.S. at 168-69 ("[F]ederal courts and litigants must rely on summary judgment and control of discovery to weed out unmeritorious claims sooner rather than later."). Plaintiff's allegations of inadequate hiring are sufficient to survive defendants' motion to dismiss.

2. *Failure to Train*

The Supreme Court warns "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Waller*, 932 F. 3d at 1285 (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)). "To satisfy the stringent deliberate indifference standard, 'a pattern of similar constitutional violations by untrained employees is ordinarily necessary.'" *Id.* (quoting *Connick*, 563 U.S. at 62). "Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Connick*, 563 U.S. at 62. There are a "narrow range of circumstances" in which "the unconstitutional consequences of failing to train could be so patently obvious that a city could be liable under § 1983 without proof of a pre-existing pattern of violations." *Id.* at 63-64.

Plaintiff does not allege a pattern of Fourth Amendment violations. Instead, she alleges "Defendants did not train Bixby police officers on how to make a proper, lawful traffic stop or how to deal with persons who refuse to pull over for a patrol car." [Doc. 40, p. 16 (citing Doc. 26, p. 15 ¶¶ 95-96)]. "Defendants also failed to train Bixby police officers on how to properly and lawfully perform a felony stop, the appropriate use of force, or resolving a situation without using force." [*Id.* (citing Doc. 26, p. 15 ¶¶ 97-98)]. Plaintiff argues "[d]efendants' failure to train its personnel [on] how to handle these regularly occurring situations demonstrates a deliberate

indifference to the rights of persons, like Simpson, who come into contact with and/or are injured by Bixby police officers." [Doc. 40, p. 17].

Taking the allegations as true, the complaint alleges a scenario identical to the hypothetical "single-incident" liability hypothesized by the Supreme Court in *City of Canton, Ohio v. Harris*, 489 U.S. 378 (1989). There, the Supreme noted:

> [C]ity policymakers know to a moral certainty that their police officers will be required to arrest fleeing felons. The city has armed its officers with firearms, in part to allow them to accomplish this task. Thus, the need to train officers in the constitutional limitations on the use of deadly force, can be said to be "so obvious," that failure to do so could properly be characterized as "deliberate indifference" to constitutional rights.

*Id.* at 390, n. 10; *accord Connick*, 563 U.S. at 63-64. Plaintiff alleges the City and Chief Shirley failed to train its officers on "the appropriate use of force" in the context of felony stops. The Supreme Court has said that failure could be characterized as "deliberate indifference."

Defendants argue that CLEET training and licensing, as required by Oklahoma law, "can serve to vitiate any argument that a municipality has a policy or custom of failing to train or supervise its officers." [Doc. 34, p. 17]. However, that is an evidentiary argument more appropriate for summary judgment. *See, e.g. Jones v. Hacker*, Case No. 13-CV-00444-JHP, 2015 WL 1279363 at *7 (E.D. Okla. March 20, 2015) (considering similar CLEET arguments on summary judgment). Here, the court must accept all facts as true and view them in the light most favorable to the plaintiff. *Waller*, 932 F.3d at 1282. Plaintiff alleges the City of Bixby failed to train its officers on the appropriate use of force. It is therefore plausible defendants were deliberately indifferent to the constitutional rights of Logan Simpson. Defendant's motion to dismiss is denied with regard to plaintiff's failure to train claims.

*3. Failure to Supervise and Discipline*

However, plaintiff fails to allege sufficient facts to state a claim for municipal liability based on the failure to supervise and discipline. As noted above, disregarding bare legal conclusions, plaintiff alleges only two incidents she argues necessitated greater supervision and discipline. Here, "[t]he causation element is applied with especial rigor." *See Waller*, 932 F.3d at 1284. "Where a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee." *Id.* (quoting *Brown*, 520 U.S. at 405). Failing to appropriately discipline Officer Little for misreporting time on activity sheets and causing a "not preventable" accident could not plausibly have caused the excessive force complained of here. The incidents are not sufficiently similar to constitute "a direct causal link between the policy or custom and the injury alleged." *Id.* For that reason, plaintiff's failure to supervise and discipline claims against the City fail.

### D. Fourteenth Amendment Claim Against the City

Finally, plaintiff alleges the City violated Logan's Fourteenth Amendment right to receive medical care for the injuries caused by Officer Little. [Doc. 26, p. 17 ¶ 112]. Specifically, plaintiff alleges the City failed to adequately train officers "to provide timely and accurate information about their location" and failed to adequately train its officers and dispatchers "to share information with one another in a timely manner." [*Id.*, p. 18 ¶¶ 118-119]. Doing so "caused or contributed to a delay in providing Logan Simpson with medical care for the injuries inflicted upon him by Defendant Little." [*Id.*, p. 19 ¶ 121].

Defendants argue these claims should be dismissed because plaintiff's allegations do not show the City acted with "deliberate indifference." [Doc. 34, p. 18]. However, similar to the Fourth Amendment training claims above, the need to provide training to dispatchers and officers

on how to report and respond to life-threatening emergencies can be said to be "so obvious" that failure to do so can properly be characterized as "deliberate indifference" to constitutional rights. *See Connick*, 563 U.S. at 63-64. Plaintiff's Fourteenth Amendment failure to train claim survives defendants' motion to dismiss.

### III. Conclusion

WHEREFORE, defendant's Motion to Dismiss [Doc. 34] is GRANTED with respect to Plaintiff's Fourth Amendment claim against Chief Shirley in his individual capacity for failure to supervise, train, and discipline, Plaintiff's Fourth Amendment claim against the City for failure to supervise and discipline, and all claims against Chief Shirley in his official capacity. The motion is otherwise DENIED.

IT IS SO ORDERED this 2nd day of January, 2020.

GREGORY K. FRIZZELL
UNITED STATES DISTRICT JUDGE